Opinion by: Jason Pulliam, Justice
FACTUAL BACKGROUND
On October 13, 2011, John and Debra Lance purchased Lot 8 in the Redus Point *613 Addition Subdivision located on Medina Lake. While considered a waterfront property, its property line does not extend to the lakefront. Rather, Lot 8 extends to a point identified as "Elevation 1084", which is the elevation of the top of the Medina Lake dam.
Lot 8 was transferred to the Lances by F.D. and Helen Franks by way of a Warranty Deed. At the same time, and by way of a Deed Without Warranty, the Franks also conveyed to the Lances a .282 acre tract of land below Lot 8, or between Lot 8 and the lakefront. This .282 acre tract ("the subject land") begins at the property line of Lot 8, at "Elevation 1084", and ends at "Elevation 1072", or what is typically the lakefront.[1] It is undisputed that the Franks held title to Lot 8, and this title was legally transferred to the Lances. It is also undisputed the Franks did not hold title to the subject land, nor did they hold any deed or other instrument from which an ownership or possessory interest in the subject land was derived. Rather, the Franks created the Deed Without Warranty and thereby transferred any purported interest held in the subject land to the Lances.
Judith Robinson is the owner of Lot 1, which is adjacent to the Lances' Lot 8. Ms. Robinson's property line on Lot 1 also extends to "Elevation 1084". For many years, the homeowners in Redus Point Addition Subdivision have all used as common property the beachfront area that sits below Elevation 1084 corresponding to Lots 1 and 8. The homeowners in Redus Point Addition Subdivision collectively improved the common beachfront area with a wooden pier, a deck, and boat ramp. These improvements are all on the subject land below the Lances' Lot 8.
In April 2012, the Lances sent a letter to Judith Robinson informing her they were going to fence off the subject land, and if Robinson did not remove the deck and pier within 30 days, the Lances would remove them. In June 2012, the Lances began building a permanent wooden fence around the subject land, blocking access to the beachfront. The Lances also cut trees, posted "no trespassing" signs, and precluded all use of the common beachfront area within the subject land.
Judith Robinson, joined by other neighbors in the Redus Point Addition Subdivision (the Robinson parties) filed suit alleging the Deed Without Warranty which purportedly transferred the subject land from the Franks to the Lances was fraudulent and recorded in violation of Chapter 12 of the Texas Civil Practice and Remedies Code. The Robinson parties alleged the Franks did not own any property below Elevation 1084 to convey to the Lances, as legal title to the property belongs to BMA (subject to any express and implied easements appurtenant). The Robinson parties alleged the Lances conspired with the Franks and intended to use the fraudulent deed to assert a bogus claim to the subject land and infringe the express and implied easement allowing the *614 use and enjoyment of the subject land by the other property owners in the subdivision. The Robinson parties contend this express and implied easement is derived from a 1917 deed from Theresa Spettle to a predecessor of the BMA (the Spettle Deed), and through the Spettle Deed, they hold "at least an equitable interest in the subject property in the form of an implied easement appurtenant and other equitable and littoral/riparian rights." The Robinson parties asserted several causes of action and damages for injury to property and nuisance, as well as a claim for declaratory relief on multiple issues.
The trial court issued a temporary injunction, precluding the Lances from preventing use of the subject land pending litigation. This court affirmed this injunction on interlocutory appeal. Lance v. Robinson, No. 04-12-00754-CV, 2013 WL 820590, at *1 (Tex.App.-San Antonio Mar. 6, 2013, no pet.).
In the continuing litigation and based upon the Fifth Amended Petition, the Robinson parties moved for partial summary judgment on some of the requested declaratory relief. Following a hearing, the trial court entered an amended order on June 11, 2014, in which it granted in part the Robinson parties' motion for partial summary judgment, awarding the following declaratory relief:
(1) The Franks-to-Lance Deed dated October 13, 2011 did not convey any ownership or other interest in the .282 acre property to the Lances;
(2) The Franks never acquired ownership or other possessory interest in the .282 acre property by deed or other written instrument, and therefore had no fee ownership of the land to convey to the Lances;
(3) ...;[2]
(4) The Spettle Deed expressly reserves an easement in the lands conveyed to MVICO (BMA predecessor) in the grantors under this deed. The easement gave the grantors the following rights:
a. The right to use the lake water for domestic purposes;
b. The right to use the lake water for bathing, boating, fishing, and hunting; and,
c. The right to construct upon the edges of the reservoir at their own peril and expense and without any liability of the grantors for the destruction thereof by water or otherwise, such improvements as may be necessary to the privileges above reserved by the grantors, their heirs and assigns, which privileges are to be exercised by said parties only to the extent and in the proportion which the acreage above described bears to the total acreage under the flow line of the reservoir;
(5) The land comprising the Redus Point Addition Subdivision is part of the land partitioned to Mathilda Spettle Redus in the partition deed dated July 18, 1917, signed by Theresa Spettle, et al.;
(6) The Lances do not own the .282 acre tract, but do have appurtenant easement rights in the area as lot owners in the Redus Point Addition Subdivision, along with the plaintiffs and other lot owners, under the express easement reserved *615 in the Spettle deed. These easement rights do not give the Lances the right to exclude other lot owners from using any portion of the land below the flow line of the lake;
(7) The Deed Without Warranty referenced in Paragraph 1 is an invalid cloud and burden on the easement rights of the plaintiffs. The county clerk is ordered to file a copy of this amended order in the deed records of Bandera County;
(8) The Deed Without Warranty is a "deed or other record" for purposes of Chapter 12 of the CPRC, § 12.002(a) ;
(9) The defendants Franks and Lances made, used, and/or presented the Deed Without Warranty with the intent to create the appearance of an actual conveyance of ownership in the .282 acre property, pursuant to CPRC § 12.002(a)(2) ;
(10) ...;
(11) Plaintiffs own an express easement in the .282 acre property, and have standing under CPRC § 12.003(a)(8).
Following entry of this order granting partial summary judgment, the trial court severed all other causes of action. Subsequently, the Robinson parties and BMA filed motions for attorney fees. The trial court held a hearing on these motions, and on October 29, 2014, signed an Amended Award of Attorney's Fees and Final Judgment. The trial court entered Corrected Proposed Findings of Fact and Conclusions of Law with regard to the attorney-fee award only, on November 18, 2014. The Lance parties perfected this appeal from the following: (1) Amended Order on Plaintiffs' Motion for Partial Summary Judgment, dated June 11, 2014, and (2) Amended Award of Attorney's Fees and Final Judgment dated October 29, 2014.
ANALYSIS
Standard of Review
Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. Hourani v. Katzen, 305 S.W.3d 239, 248 (Tex.App.-Houston [1st Dist.] 2009, pet. denied). We review the trial court's grant of a summary judgment de novo. Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192 (Tex. 2007) ; Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).
To prevail on a motion for summary judgment, the movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." TEX. R. CIV. P. 166a(c) ; accord Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985). Thus, a plaintiff moving for summary judgment on its claims for affirmative relief must conclusively prove each element of its cause of action as a matter of law and must produce evidence that would be sufficient to support an instructed verdict at trial. See Swilley v. Hughes, 488 S.W.2d 64, 67 (Tex. 1972) ; Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc., 468 S.W.3d 557, 566 (Tex. App.-San Antonio 2014, no pet.).
Every reasonable inference must be indulged in favor of the non-movant and all doubts must be resolved in its favor, crediting evidence favorable to the nonmovant if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not.
*616 City of Keller v. Wilson, 168 S.W.3d 802, 824-25 (Tex. 2005) ; see Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). Because all doubts as to the existence of a genuine issue of a material fact are resolved against the movant, if resolution of the summary judgment motion involves "the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted." Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). In this light, evidence which favors the movant is not considered unless it is uncontroverted. Id. After all the evidence has been sifted in this manner, the court must determine whether the movant conclusively established its right to judgment as a matter of law. See MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 (Tex. 1986). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. City of Keller v. Wilson, 168 S.W.3d at 816.
Application
1. Deficiency of Summary Judgment Record
The Lance parties first argue the trial court improperly granted summary judgment because it did not have necessary evidence before it to determine the summary judgment awarded. Specifically, the Lance parties contend the Franks-to-Lance deed and the 1917 Spettle deed, which the Robinson parties contend established the implied and appurtenant easements for common use of the subject land, were not attached as evidence to the motion for partial summary judgment, and thus, are not part of the summary judgment record. Because these deeds were not part of the summary judgment record, the Lance parties contend the trial court had no basis upon which to grant the declaratory relief.[3]
The Robinson parties respond that the motion for partial summary judgment specifically referenced and relied upon the testimony and exhibits admitted during the temporary injunction hearing held on July 12, 2011 before the same judge. The Robinson parties contend the deeds were properly before the trial court because the deeds were admitted during the temporary injunction hearing and were on file with the clerk of the court, and the exhibits and transcript of the temporary injunction hearing were present, referenced, and discussed, without objection, at the hearing on the motions for summary judgment.
Public policy dictates that procedural errors be raised at the trial court level to allow for correction without substantial interference with the judicial process. Jones v. McSpedden, 560 S.W.2d 177, 180 (Tex.App.-Dallas 1977, no writ). Pursuant to this public policy, any defect in the form of summary judgment evidence will not be grounds for reversal unless the defect is specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend. TEX. R. CIV. P. 166a(f) ; Cluett v. Med. Protective Co., 829 S.W.2d 822, 825 (Tex.App.-Dallas 1992, writ denied). Thus, a movant's failure to attach necessary summary judgment evidence to the motion must be raised and ruled on by the trial court to preserve error for complaint on appeal, and a non-movant's failure to object to defects in a movant's summary judgment evidence constitutes waiver of challenge based upon *617 those defects. See Cluett, 829 S.W.2d at 825 ; Segal v. Bock, No. 01-10-00445-CV, 2011 WL 6306623, at *5 (Tex. App.-Dallas, Dec. 15, 2011, no pet.) (unpublished).
The record reveals the Lance parties did not object to or raise the issue of the absence of these deeds in the Robinson parties' summary judgment evidence, nor did the Lance parties object to any defect by failure to attach the deeds to the summary judgment motion. The Lance parties did not object to any discussion or review of the deeds at the summary judgment hearing. Accordingly, the Lance parties waived this complaint. See Cluett, 829 S.W.2d at 825.
To some extent the Lance parties' argument could suggest the Robinson parties' failure to attach the deeds to their motion for partial summary judgment was a substantive defect that requires reversal. To support this contention, the Lance parties rely on Sorrells v. Giberson, 780 S.W.2d 936 (Tex.App.-Austin 1989, writ denied) (on Motion for Reh'g). In Sorrells, a lender with a promissory note moved for summary judgment against the borrower, but did not attach the note to either the summary judgment motion or any other properly filed document in the record. Id. at 937. The court held the promissory note could not serve as a basis for summary judgment because the note was completely absent from the record. Because the absence of any evidence was a substantive defect, the trial court held the borrower's failure to object was irrelevant to the issue of sufficiency of summary judgment evidence. Id. at 937-38.
The complete lack of evidence in Sorrells was the substantive defect which precluded summary judgment, not the failure to physically attach the promissory note to the motion. Id. at 937-38. Thus, the Lance parties' reliance on Sorrells is misplaced. Review of the summary judgment evidence reveals the Franks-to-Lance deed and the Spettle deed do not appear in the summary judgment record as independent attachments to the Robinson parties' motion for partial summary judgment; however, the deeds were admitted into evidence at the Preliminary Injunction Hearing, and the transcript and exhibits from this hearing were referenced in the motion for partial summary judgment and were discussed at the summary judgment hearing. While the physical copies of the deeds may not have been attached to the summary judgment motion, the transcript of the summary judgment hearing reveals the trial court reviewed the deeds, the parties and the judge discussed the deeds, and the deeds were present in the courtroom at the summary judgment hearing as part of the transcript of the preliminary injunction hearing, without objection from the Lance parties. Therefore, the Robinson parties' failure to physically attach the deeds to their motion for partial summary judgment was not a substantive defect. See Segal, 2011 WL 6306623, at *5.
For these reasons, the Lance parties' first issue is overruled.
2. Relief Requested Must Be Raised in a Suit to Try Title
The Lance parties contend the Robinson parties seek declaratory judgment on an issue of ownership that can only be determined in a trespass-to-try-title cause of action. Because any action that involves a dispute over title to land is effectively an action in trespass to try title, the Lance parties contend the Robinson parties cannot challenge the validity of the Franks' deed to the Lances without pleading and proving a trespass-to-try-title cause of action. The Lance parties contend that to find title in a party other than the grantee (the Lances), a court must first set aside the grantee's deed. Until *618 there is a successful suit to set aside the Franks-to-Lance deed without warranty, the Lances contend the deed is valid and represents prima facie evidence of title vested in the Lances.[4]
The Robinson parties respond that the Lance parties mischaracterize their claims and requested relief. The Robinson parties assert they seek the right to use and enjoy an express easement, and this express easement was negatively affected by the Lances' invalid claim to the easement property. Because the Robinson parties seek to declare the validity of an easement to use and enjoy the subject land, a trespass to try title action was not appropriate to obtain the desired relief. The Robinson parties admit that only a party in possession, or that alleges entitlement to possession, of property may file a trespass to try title action; however, easement rights are properly adjudicated, as here, through request for declaratory relief.
"A trespass to try title action is the method of determining title to lands, tenements, or other real property" and is the exclusive method to adjudicate rival claims of title to real property. TEX. PROP. CODE ANN. §§ 22.001(a) (West 2014); Vernon v. Perrien, 390 S.W.3d 47, 54 (Tex.App.-El Paso 2012, pet. denied). Thus, a trespass-to-try-title action is used to clear problems in chains of title to recover possession of land alleged to be unlawfully withheld from a rightful owner. See Martin v. Amerman, 133 S.W.3d 262, 265 (Tex. 2004). The plaintiff in a trespass to try title action must recover, if at all, on the strength of its own title and may not rely on the weakness of the defendant's title. Rogers v. Ricane Enters., Inc., 884 S.W.2d 763, 768 (Tex. 1994) ; Diversified, Inc. v. Hall, 23 S.W.3d 403, 406 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). Therefore, the effect of a trespass to try title action is to establish the validity of the plaintiff's claim of title, and the prevailing party's remedy in a trespass to try title action is title to, and possession of, the real property interest at issue. See Rogers, 884 S.W.2d at 768 ; Vernon, 390 S.W.3d at 54. To satisfy its burden of proof on a trespass-to-try-title action, "[t]he plaintiff has the burden to establish superior title by showing it has (1) title emanating from the sovereignty of the soil, (2) a superior title in itself emanating from a common source, (3) title by adverse possession, or (4) title by earlier possession coupled with proof that possession has not been abandoned." Diversified, Inc., 23 S.W.3d at 406.
In the Fifth Amended Petition, the Robinson parties assert their right to an express and implied easement appurtenant to use and enjoyment of the subject land. The Robinson parties do not seek to establish or obtain ownership or possessory interest in the subject land, nor do they assert superior title. The facts and requests for declaratory relief pertain to the Robinson parties' assertion of easement rights, not superior title or right to possession of the subject land. Thus, a trespass-to-try-title action is not appropriate to adjudicate the dispute presented and to obtain the remedy sought. See Rogers, 884 S.W.2d at 768 ; Martin, 133 S.W.3d at 265.
The Lance parties cite to Archaeological Conservancy v. Wilson Land and Cattle Co., as support for their argument that any dispute pertaining to a vestment of *619 title must be brought in a trespass to try title action. See Archaeological Conservancy v. Wilson Land and Cattle Co., 2010 WL 1253576, at *4 (Tex.App.-Austin March 30, 2010, no pet.) (mem. op.). However, Archaeological Conservancy does not establish the broad-reaching holding the Lance parties suggest. The parties in Archaeological Conservancy each asserted superior title, or possessory interest, in the subject property. The court did not hold that any dispute pertaining to vestment of title must be brought in a trespass to try title action. See itation index="33" url="https://cite.case.law/citations/?q=2010%20WL%201253576">id. Rather, the court concluded that when asked to resolve whether a suit implicates a trespass-to-try-title action or may proceed under the Declaratory Judgment Act, "courts look to the heart of the dispute to determine whether, in substance, it is a dispute over title, or whether the true aim of the suit is simply to determine the validity or construction of a deed or other instrument." Id. (citing McRae Exploration & Prod. v. Reserve Petroleum Co., 962 S.W.2d 676, 685 (Tex.App.-Waco 1998, pet. denied) ("This suit involves a title dispute between competing deeds. It does not involve the construction or validity of the deeds. As such it is an action for trespass to try title and not for declaratory judgment."); Bell v. State Dep't of Highways & Pub. Transp., 945 S.W.2d 292, 294 (Tex.App.-Houston [1st Dist.] 1997, writ denied) ("Bell makes no claim that the adverse possession statutes are ambiguous or invalid. He claims only that the State is not entitled to ownership under them. The Declaratory Judgment Act does not supplant a suit for trespass to try title under these circumstances. Moreover, the State claims ownership under a lost deed; thus, there is no deed whose validity must be determined or terms construed.")).
In this case, the trial court designates the existence of easement rights for the use and enjoyment of property, but does not otherwise make a determination of competing assertions of title to the subject property. However, while the Robinson parties do not seek to assert superior title in the subject land in themselves, they do seek to dispel title, or any superior possessory interest, in the Lances. The issue presented with regard to declarations 1, 2, 6, and 9 in this case is whether the Franks-to-Lance Deed Without Warranty passed any title in the subject land to the Lances and also pertain to the issue whether the Deed Without Warranty was voidable based upon fraud.
Even in this context, however, the Robinson parties' remedy sought does not fit within the purview of a trespass to try title action. While the trial court's declarations address the Lances' possessory interest in the subject land, the true crux of the litigated issue was not whether the Robinson parties' title was superior to the Lances', nor do the Robinson parties seek to obtain title to or possession of the subject land. Rather, the Robinson parties sought to adjudicate the issue whether the Lances hold sufficient ownership interest that would enable them to preclude easement rights or any use and enjoyment of the subject land. In addition, a trespass-to-try-title action is not the appropriate action to challenge a deed based upon fraud. Wilhoite v. Sims, 401 S.W.3d 752, 760 (Tex.App.-Dallas 2013, no pet.). Therefore, a trespass-to-try-title action was not appropriate for the Robinson parties to obtain the relief sought or granted. See Wilhoite, 401 S.W.3d at 760.
Because a trespass-to-try-title action was not the appropriate action to litigate the issues raised or provide the remedy sought, the Lances' issue is overruled.
None of the remaining arguments presented by the Lance parties can be construed to challenge the trial court's declarations *620 1 and 2 or 4. For this reason, these declarations, which declare the Lances hold no ownership interest in the subject land, shall be affirmed. Because the Lances do not hold ownership interest in the subject land, they may not exclude the Robinson parties from its use and enjoyment. In this light, it would appear the remaining arguments presented are moot. However, because the remaining declarations pertain to the origin and continuing validity of the Robinson parties' asserted easement to the use and enjoyment of the subject land, we will address the remaining arguments.
3. Challenge to Validity of the Spettle Deed
Citing an opinion of this court, Bexar-Medina-Atascosa Counties Water Improvement Distr. No. 1 v. Wallace , the Lance parties contend the Spettle Deed, through which the Robinson parties assert they received an implied and appurtenant easement to use and enjoy the subject land, is invalid. See Bexar-Medina-Atascosa Counties Water Improvement Distr. No. 1 v. Wallace, 619 S.W.2d 551, 554 (Tex.App.-San Antonio 1981, writ ref'd n.r.e.). In Wallace , this court held a Spettle-to-BMA deed was void because it did not contain a valid description of the land conveyed. Id. Following Wallace , the Lance parties contend a similar description of land contained in the Spettle deed at issue in this case is insufficient, and therefore, void. Because the Spettle deed is invalid, the Lance parties contend there is no need to consider whether the language in the deed granted an easement to the Robinson parties.[5]
The Robinson parties respond that the issue of the validity of the Spettle deed is not properly before this court, as the Lance parties have not asserted an action to challenge the Spettle Deed's validity based upon the sufficiency of the property description. The Robinson parties contend the Spettle-to-BMA deed at issue in Wallace was not the same deed at issue in this case, and the language contained in the deed at issue in this case contains additional points of reference from which the contours of the property described can be sufficiently ascertained.
Assuming the challenge of the validity of the 1917 Spettle Deed was adequately raised and presented in the trial court through the Lance parties' response to the motion for partial summary judgment, the proposed application of Wallace is an overextension of its holding. First, it is undisputed that the deed at issue in Wallace is not the same deed as the Spettle Deed at issue in this case. Because the Spettle-to-BMA deed at issue in Wallace was not the same deed at issue in this case, the holding in Wallace does not per se invalidate the Spettle Deed in this case. To extend the holding in Wallace to this case, then, this court must analyze the Lance parties' argument and designation of insufficient language in the Spettle Deed that renders it void under Wallace .
Without quoting any language in the Spettle Deed or directing this court to any particular deficiency, the Lance parties state "the description of land ... employs an identical technique and description as contained in the deed this court found to be void." The Lance parties argue the Spettle Deed uses points of beginning as in *621 the Wallace deed, such as "point 0", "point 1", etc., and uses calls without reference to any object or monument that would enable one to locate the land "on the ground."
While the subject Spettle Deed may contain similar language as that in Wallace , such as "point 0", "point 1", as the Lances argue, Wallace does not hold that use of this language renders a deed, per se, insufficient. See Wallace, 619 S.W.2d at 554. Without reference to any specific language in the Spettle Deed and guidance with regard to alleged deficiencies based upon Wallace , this court is not able to fully analyze the Lance parties' argument.
This court cannot review the record and evidence independently to construct an appellant's argument. See Torres v. State, 979 S.W.2d 668, 674 (Tex.App.-San Antonio 1998, no pet.) ; TEX.R.APP. P. 38.1. To comply with Rule of Appellate Procedure 38.1, an appellant must articulate the issue and question of law to be decided. Bolling v. Farmers Branch Indep. Sch. Dist., 315 S.W.3d 893, 896 (Tex.App.-Dallas 2010, no pet.). The brief must guide the court through the appellant's argument with clear and understandable statements of the contentions being made. Id. If the court must speculate or guess about what contentions are being made, or if record references are not made or are inaccurate, misstated, or misleading, then the brief fails to present anything for review. Id. In addition, reference to sweeping or general statements of general law are rarely appropriate; if the court is not provided with existing legal authority that can be applied to the facts of the case, the brief fails to present anything for review. Id.
Because the Spettle deed addressed and interpreted in Wallace was a different deed than the one at issue in this case, and the Lances do not identify the deficient language in the Spettle Deed, nor explain the fatality of its deficiency based upon the holding in Wallace , this court is not able to evaluate the substantive merits of this issue presented.
For these reasons, this issue is overruled.
4. Alleged Express Easement was not Conveyed in the Robinson Parties' Chain of Title
The Lance parties contend the Robinson parties' asserted entitlement to an express or implied easement in the subject land must fail because the 1917 Spettle Deed, from which they assert this entitlement originates, is not in the Robinson parties' chain of title. The Lance parties contend the Robinson parties' chain of title goes back to the Spettle Partition Deed, not the Spettle Deed, and the Spettle Partition Deed "contains no reference to any type of reservation, grant or license with regard to usage of water, access to the Lake or any other such matter." The Lance parties conclude by stating, "[t]here is nothing to support Plaintiffs' claim to an express easement based on a deed which is not in their chain of title."[6]
Again, the Lance parties do not provide citations to the record nor provide argument or explanation of any application to caselaw. However, this court will liberally construe and analyze this argument based *622 upon known, or otherwise referenced, portions of the record.
The summary judgment record includes testimony presented at the Preliminary Injunction Hearing. At this hearing, the Robinson parties presented testimony of land surveyor Lemeul Sinclair. Mr. Sinclair testified the Spettle Deed from Theresa Spettle to MVIC conveyed land up to Elevation 1084 upon which MVIC was to construct Medina Lake. Thus, the Spettle Deed conveyed the land for the creation of Medina Lake. Mr. Sinclair also testified, and it is undisputed, that the Spettle Deed reserves to Theresa Spettle and her heirs and assigns the right to use and enjoy the land below "Elevation 1084" and the waters in the lake for domestic purposes, the right to use the waters for bathing, boating, fishing, and hunting, and the right to construct upon the edges of the lake such improvements as may be necessary and incident to the exercise of the privileges reserved. It is undisputed that this reservation of rights is the origin of the express and implied appurtenant easements upon which the Robinson parties assert the right to use and enjoy the subject land.
Mr. Sinclair further testified that following execution of the Spettle Deed, Theresa Spettle executed several deeds which partitioned land in her possession and conveyed these partitions to her children. The partition deed executed by Theresa Spettle to her daughter, Mathilde Spettle Redus, conveyed certain land to elevation 1084 that was adjacent to the land transferred to MVIC for the creation of Medina Lake. Mr. Sinclair testified the land transferred to MVIC in the Spettle Deed and the land transferred to Mathilde Spettle in the Spettle Partition Deed were both originally part of the same survey of land, "survey no. 231 out of Adams, Beaty and Moulton survey." Finally, Mr. Sinclair testified, and it is undisputed that the land upon which the Redus Point Addition Subdivision was established was part of the land transferred to Mathilde in the Spettle Partition Deed.
Also included in the summary judgment record is the Spettle Partition Deed. The Spettle Partition Deed states that the grantors (Theresa Spettle) do:
GRANT, CONVEY, RELEASE AND CONFIRM the aforesaid tracts or parole of land aggregating 728 acres ... unto her, the said MATHILDE SPETTLE REDUS, ... TO HAVE AND TO HOLD the said ... tracts ... with all and singular the hereditaments and appurtenance thereunto belonging, or in anywise incident or appertaining, unto her the said Mathilda Spettle Redus, to her sole and separate use and as her separate estate, her heirs and assigns, in severalty, absolutely, in fee simple and forever.
The Lance parties did not submit any evidence at the summary judgment hearing to controvert this testimony or evidence.[7]
Thus, through the undisputed facts and Mr. Sinclair's testimony, the summary judgment record before the trial court established the land conveyed in the Spettle *623 Deed and the land conveyed in the Spettle Partition Deed originated from a contiguous property. Theresa Spettle conveyed a portion of this contiguous property to MVIC for the creation of Medina Lake. The land conveyed in the Spettle Deed reserved in Theresa Spettle and her heirs and assigns the right to use the land below Elevation 1084 that surrounded Medina Lake and that corresponded to the land she retained. From the land retained by Theresa Spettle, the Spettle Partition Deed conveyed to Mathilde Spettle Redus certain land, some of which abutted Medina Lake. The Spettle Partition Deed specifically transferred to Mathilde Spettle Redus all "hereditaments and appurtenance thereunto belonging, or in anywise incident or appertaining" to the land conveyed. Thus, the Spettle Partition Deed transferred to Mathilde Spettle Redus the specific rights to use and enjoy the waters and the land surrounding Medina Lake that was reserved by Theresa Spettle in the Spettle Deed.
Although the Lance parties argue the Spettle Partition Deed "contains no reference to any type of reservation, grant or license with regard to usage of water, access to the Lake or any other such matter," it does contain the habendum clause which conveys "all and singular the hereditaments and appurtenance thereunto belonging, or in anywise incident or appertaining" to the land conveyed. Moreover, in certain situations, a deed conveying affected land need not specifically mention an existing easement because an easement can follow the land without any mention whatever. See McDaniel v. Calvert, 875 S.W.2d 482, 484 (Tex.App.-Fort Worth 1994, no pet.). Therefore, regardless whether the Spettle Deed specifically described any easement, it could have been conveyed with the land. See ids="10009872" index="48" url="https://cite.case.law/sw2d/875/482/#p484">id. Therefore, this argument fails.
From the summary judgment evidence presented, the Robinson parties conclusively established their chain of title back to specific land held by Theresa Spettle. Mr. Sinclair testified Theresa Spettle (and others) at one time owned a large piece of property, which included "Survey 231". The Spettle Deed divided the property within the portion identified as Survey 231, conveying to MVIC title below Elevation 1084 for the creation of Medina Lake. Of the land within Survey 231 retained by Theresa Spettle, she partitioned a portion to Mathilde Spettle Redus. Mathilde Spettle Redus, then, eventually sold a portion of this property, which became the Redus Point Addition Subdivision, and thereby, the property owned by the Robinson parties. Therefore, the Lance parties' argument fails based upon the uncontroverted summary judgment evidence.
In any event, even if, as the Lance parties contend, the Robinson parties' chain of title only goes back to the Spettle Partition Deed, the evidence presented conclusively establishes that upon execution of the Spettle Partition Deed, Mathilde Spettle Redus received all "hereditaments and appurtenance thereunto belonging, or in anywise incident or appertaining" that were incident to the land conveyed. Such "hereditament and appurtenance" held by Theresa Spettle, and thus, conveyed, included the right to use and enjoy the land below Elevation 1084 up to the lakefront. From this evidence, the Robinson parties conclusively established the rights and entitlements to use and enjoy the subject land that were reserved by Theresa Spettle in the Spettle Deed and were passed to Mathilde Spettle Redus in the Spettle Partition Deed. Thus, even if the Robinson parties' chain of title does not go back to the Spettle Deed, the summary judgment evidence still conclusively establishes the Robinson parties' asserted right to use and *624 enjoy the land originated from the Spettle Deed.
For these reasons, this issue is overruled.
5. The Spettle Deed Does Not Establish an Express Easement in the Lands Conveyed
In presenting this issue, the Lance parties state, "[f]or a host of reasons, the Spettle Deed does not establish an express easement in the lands conveyed to [BMA]." The Lance parties begin by quoting language from the Spettle Deed upon which they base all of the arguments under this heading, and then proceed with discussion of each "reason" the Spettle Deed does not create an express easement. Each of these reasons will be addressed in turn.[8]
a. The Language Does Not Comply With the Statute of Frauds
The Lance parties present this "reason" with recitation of common law pertinent to the requirement that the description of an easement must satisfy the statute of frauds and thus, must contain a sufficient certainty for its location. The Lance parties then close with the statement, "[t]he language relied upon by Plaintiffs in the Spettle Deed is silent as to where the claimed easement is located. The language does not even attempt to locate the easement to the degree where a surveyor could go upon the land and locate the easement."
While the caselaw cited accurately outlines the requirements for satisfaction of the statute of frauds, the type of easement at issue in this case is one of use and enjoyment of the subject land. While not favored, when an easement is one allowing use and enjoyment of property, certain exceptions to the statute of frauds could apply. See Drye v. Eagle Rock, Inc., 364 S.W.2d 196, 205-06 (Tex. 1962). Further, caselaw recognizes an exception to the statute of frauds, allowing easements appurtenant by implication. See ids="10155866" index="50" url="https://cite.case.law/sw2d/364/196/#p205">id. at 206-07. The Lance parties do not discuss these exceptions or different applications of the statute of frauds, nor do they present to this court any reason to conclude the exceptions do not apply.
Texas Rule of Appellate Procedure 38.1(i) provides that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1. Although an appellate court must construe briefing requirements liberally and reasonably, a party asserting error on appeal must put forth some specific argument and analysis showing the record and the law support his contentions. Gonzalez v. VATR Const. LLC, 418 S.W.3d 777, 783-84 (Tex.App.-Dallas 2013, no pet.) ; San Saba Energy, EP. v. Crawford, 171 S.W.3d 323, 338 (Tex.App.-Houston [14th Dist.] 2005, no pet.). An appellant must provide such a discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. Tesoro Petroleum Corp., 106 S.W.3d at 128. "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." Id.
When the appellant fails to discuss the evidence supporting his claim or *625 apply the law to the facts, he presents nothing for review. See Rocha v. State, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000). Thus, failure to offer argument, provide appropriate record citations or a substantive analysis waives an appellate issue. WorldPeace v. Comm'n for Lawyer Discipline, 183 S.W.3d 451, 460 (Tex.App.-Houston [14th Dist.] 2005, pet. denied) ; Bolling, 315 S.W.3d at 896.
While the Lance parties provide an excerpt of the Spettle Deed upon which this argument relies, the Lance parties' appellate brief does not provide any discussion of the evidence or law to support the general claim. The brief does not specify or discuss any deficiencies in the Spettle deed or indicate how the Spettle deed fails to comply with the cited law requiring indication of a dominant and servient estate. The appellate brief contains only the conclusory statement, unsupported by legal citations, that "[t]he language relied upon by Plaintiffs contains no reference to a dominant or servient estate." Because the Lance parties' appellate brief contains only a general statement of law and a one-statement conclusion, it does not present sufficient argument nor provide basis for this court to conclude the trial court erred in any way.See WorldPeace, 183 S.W.3d at 460 ; Tesoro Petroleum Corp., 106 S.W.3d at 128 ; TEX.R.APP. P. 38.1.
This court cannot draw the proposed conclusion or analyze the issue presented based upon the narrow and incomplete application of law proposed. To comply with Rule 38.1, existing legal authority applicable to the facts and the questions the appellate court is called on to answer must be accurately cited. Bolling, 315 S.W.3d at 896. The brief must apply the facts to the referenced law to guide the court in the proposed result or to show how the trial court committed error. See ids="7326152,7326228" index="58" url="https://cite.case.law/sw3d/315/893/">id. ; Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 128 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). The Lance parties do not describe or delineate any deficiency in the language contained in the Spettle Deed or provide application of the caselaw cited. The Lance parties do not present argument to direct this court in the ways in which the Spettle Deed does not satisfy the statute of frauds.
For this reason, this argument is inadequately briefed and is waived for appeal.
b. There is no Language Creating a Dominant and Servient Estate
In presentation of this reason, the Lances begin with a one-sentence general statement of law reciting the necessity of the distinction of a dominant and servient estate to create an express easement. The general statement of law is followed by the single-statement conclusion, "[t]he language relied upon by Plaintiffs contains no reference to a dominant or servient estate." In the Reply Brief, the Lance parties provide insight into their substantive argument on this point by dispelling the Robinson parties' response; however, the Lance parties provide little more than the proposition that the alleged easement upon which the Robinson parties rely did not originate from the Spettle Deed because it "does not identify a dominant estate."
For these reasons, this argument is inadequately briefed and is waived for appeal.
c. The Language Creates a Non-transferable License or Easement in Gross
In presentation of this reason, the Lances begin with a one-sentence general statement of law which classifies the right to go upon land of another as either a license or an easement in gross. This general statement of law is followed by the *626 single-statement conclusion, "[t]he language relied upon by Plaintiffs creates a license or an easement in gross, not an easement appurtenant."
This argument is not adequately briefed. First, the statement of law is inaccurate in that it omits a third classification of a right to go upon land for pleasure and recreation: an easement appurtenant to the land. See McDaniel v. Calvert, 875 S.W.2d 482, 484-85 (Tex.App.-Fort Worth 1994, no pet.) ("Easement appurtenant" is easement interest that attaches to land and passes with it). In addition, the Lance parties' brief does not include a clear and concise argument, nor does it put forth specific argument and analysis showing the record and the law support these contentions. The Lance parties' appellate brief does not provide any discussion of the evidence or law to support the general claim, but contains only the conclusory statement, unsupported by legal citations, that "[t]he language relied upon by Plaintiffs creates a license or an easement in gross, not an easement appurtenant" Because the Lance parties' appellate brief contains only a general statement of law and a one-statement conclusion, it does not present sufficient argument nor provide basis for this court to conclude the trial court erred in any way.See WorldPeace, 183 S.W.3d at 460 ; Tesoro Petroleum Corp., 106 S.W.3d at 128 ; TEX.R.APP. P. 38.1.
For these reasons, this argument is inadequately briefed and is waived for appeal.
d. The Language Does Not Contain Explicit Terms of the Easement
In presentation of this reason, the Lances begin with a one-sentence general statement of law with citation pertaining to the requirement that an express easement must be explicit as to its essential terms. The Lance parties then state, "[i]n contrast, the trial court's ruling simply states: 'Plaintiffs own an express easement in the disputed area.' "
It is unclear from the appellate brief whether the Lance parties argue the Spettle Deed is inadequate or the trial court's declaration is inadequate. Either way, the Lance parties provide no argument as to how the trial court's declaration is in error or to otherwise guide the Court's determination of this issue. The Lance parties' brief does not include a clear and concise argument, nor does it discuss the evidence supporting this contention or apply the law to the facts. Therefore, this court cannot ascertain the Lance parties' argument with regard to this issue or formulate any contention regarding the relation of this argument to any alleged error committed by the trial court. This failure to offer argument, provide appropriate record citations or a substantive analysis waives an appellate issue. See WorldPeace, 183 S.W.3d at 460 ; Tesoro Petroleum Corp., 106 S.W.3d at 128 ; TEX.R.APP. P. 38.1.
For these reasons, this argument is inadequately briefed and is waived for appeal.
e. Rights Under an Express Easement are not Implied
In presentation of this reason, the Lances begin with a one-sentence general statement of law asserting that the rights of an express easement may not be implied. This general statement of law is followed by the single-statement conclusion, "[t]herefore, since the language relied upon by Plaintiff is silent as to any rights to use, cross, recreate on or ingress and egress over any real property, no such rights may be implied. There is no support for the trial court's holding that Plaintiffs have an easement in the disputed area."
*627 The Lance parties' brief does not include a clear and concise argument, nor does it put forth specific argument and analysis showing the record and the law support any contention made. The Lance parties' appellate brief does not provide any discussion of the evidence or law to support the general claim, but contains only a conclusory statement, unsupported by legal citations. Because the Lance parties' appellate brief contains only a general statement of law and a one-statement conclusion, it does not present sufficient argument nor provide basis for this court to conclude the trial court erred in any way. See WorldPeace, 183 S.W.3d at 460 ; Tesoro Petroleum Corp., 106 S.W.3d at 128 ; TEX.R.APP. P. 38.1.
For this reason, this argument is inadequately briefed and is waived for appeal.
f. None of Plaintiff's Deeds Contain Any Easement Language
In presentation of this reason, the Lance parties present the single-statement conclusion, "[c]ritically, none of Plaintiff s deeds contain any easement language which the Texas Supreme Court would find relevant," followed by citation to a Texas Supreme Court case.
This one-sentence, general conclusion provides insufficient argument or basis from which this court could conclude the trial court erred in any way. See WorldPeace, 183 S.W.3d at 460 ; Tesoro Petroleum Corp., 106 S.W.3d at 128 ; TEX.R.APP. P. 38.1.
For this reason, this argument is inadequately briefed and is waived for appeal.
6. A Deed Cannot Be a Cloud On An Easement
In presentation of this appellate argument, the Lance parties state, "[i]n addition to the errors of fact and law contained in the trial court's summary judgment order, the order also contains its share of absurdities. For instance, declaration 7 states: 'The Deed Without Warranty is an invalid cloud and burden on the easement rights of the plaintiffs.' " The Lance parties go on to state they "find no such cause of action in Texas jurisprudence" and cite law pertaining to a cloud on title.
The court cannot ascertain an appellate argument from the statements presented. The statements do not guide the court's determination whether the trial court erred in any way. See WorldPeace, 183 S.W.3d at 460 ; Tesoro Petroleum Corp., 106 S.W.3d at 128 ; TEX.R.APP. P. 38.1.
Because it is inadequately briefed, this issue is waived on appeal.
7. There is no Support for the Favorable Findings on the Robinson parties' CPRC Claim
The Lance parties challenge declarations 7 through 9, stating there is "no support" for these declarations and "[i]n the interest of judicial economy, this Court should make that determination now so that the Defendants, on remand, will not be met with having to defend a Chapter 12 claim." The Lance parties then assert disjointed statements that propose no clear or concise argument.
As presented, the Lance parties do not provide any basis for this court to make a determination that "there is no support for declarations 7 through 9." It is difficult to glean any appellate argument or requested action from this court, and this court cannot determine whether there is "no support" for declarations 7 and 9 without more guidance and directive argument.
Construed liberally as a sufficiency challenge, substantively, the Lances' argument must fail. The Lance parties request this court determine there is no support for *628 Declarations 7 through 9 to preclude litigation on remand on this cause of action. However, even if this court were to make the determination proposed, given that this is an appeal from summary judgment, this court cannot make such a determination, nor would any determination preclude any litigation on remand. Thus, the Lance parties' assertion that "[i]n the interest of judicial economy, this Court should make that determination now so that the Defendants, on remand, will not be met with having to defend a Chapter 12 claim" has no merit.
For these reasons, this issue is overruled.
8. There is Legally and Factually Insufficient Evidence to Support the Attorney Fees; Nor is it Equitable and Just
On May 30, 2014, the trial court held a hearing on the Robinson parties' motion for partial summary judgment pertaining to the requested declaratory relief, only. The trial court granted the Robinson parties' motion and, on June 11, 2014, entered its "Amended Order on Plaintiffs' Motion for Partial Summary Judgment" adjudicating the declaratory relief, only. On June 12, 2014, the trial court granted the Robinson parties' motion to sever the action for declaratory relief from the remaining causes of action. The Robinson parties also requested attorney fees as allowed under the Uniform Declaratory Judgment Act. Following a hearing, the trial court awarded attorney fees to the Robinson parties and to BMA and entered an "Amended Award of Attorney's Fees and Final Judgment" on October 29, 2014. Subsequently, on November 18, 2014, the trial court rendered "Corrected Findings of Fact and Conclusions of Law" pertaining to the attorney fees only.
On appeal, the Lance parties contend the record does not contain legally or factually sufficient evidence to support a finding that the attorney fees awarded were reasonable and necessary or that the fees awarded are equitable and just. The Lance parties argue the only fees that would be reasonable to award would be those associated with the temporary injunction and motion for summary judgment; however, "the fee statements and attorney testimony upon which the trial court based its award envelop a much larger litigation universe than the work that was necessary for the motion for summary judgment." Thus, the Lance parties contend the Robinson parties presented insufficient evidence to support the reasonableness or justness of the awarded attorney fees by failing to separate the fees incurred in the declaratory-relief litigation from the fees incurred in the litigation on the remaining causes of action.
The Robinson parties respond that the Lance parties waived any argument or complaint pertaining to the attorney-fee award because they failed to specify the trial court's findings of fact and conclusions of law they challenge, nor do they provide any basis from which this court can conclude the findings of fact or conclusions of law are in any way erroneous.
Findings of fact are reviewable for legal and factual sufficiency of the evidence to support them. First Nat'l Bank in Dallas v. Kinabrew, 589 S.W.2d 137, 146 (Tex.App.-Tyler 1979, writ ref'd n.r.e.). A party appealing from a bench trial in which the trial court made findings of fact and conclusions of law should direct any challenge on the sufficiency of the evidence at specific findings of facts, rather than at the judgment as a whole. See Shaw v. City of Dallas, 251 S.W.3d 165, 169 (Tex.App.-Dallas 2008, pet. denied) ;
*629 Nw. Park Homeowners Ass'n, Inc. v. Brundrett, 970 S.W.2d 700, 704 (Tex.App.-Amarillo 1998, pet. denied) ; Levine v. Maverick Cty. Water Control, 884 S.W.2d 790, 796 (Tex.App.-San Antonio 1994, writ denied). "[U]nless the trial court's findings of facts are challenged by a point of error on appeal, they are binding upon the appellate court." Nw. Park Homeowners Ass'n, Inc., 970 S.W.2d at 704 ; Whitehead v. Univ. of Texas, 854 S.W.2d 175, 178 (Tex.App.-San Antonio 1993, no writ).
"Conclusions of law are reviewable when attacked as erroneous as a matter of law, but not when attacked on grounds of sufficiency of the evidence to support them, as if they were finding of fact." Whitehead, 854 S.W.2d at 178 ; Kinabrew, 589 S.W.2d at 146 ; see also Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). The trial court necessarily draws its conclusions of law from the facts as it finds them. Kinabrew, 589 S.W.2d at 146.
There is some authority for the proposition that a challenge to an otherwise unidentified finding of fact may be sufficient if after giving consideration to the argument, the number of the findings of fact, the nature of the case, and the underlying elements of the applicable legal theories, the specific findings of fact which the appellant challenges can be fairly determined from the argument. See In re Estate of Bessire, 399 S.W.3d 642, 648-49 (Tex. App.-Amarillo 2013), reh'g overruled (May 3, 2013), review denied (Aug. 23, 2013); Lujan v. Villa, No. 07-01-00277-CV, 2002 WL 1131005, at *2-3, 2002 Tex.App. LEXIS 3917 (Tex. App.-Amarillo May 29, 2002, no pet.) (not designated for publication) (citing Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982) ). In addition, when a complete statement of facts appears in the record, the findings are not conclusive if the evidence reflects the contrary is established as a matter of law or if there is no evidence to support the findings. City of Clute v. City of Lake Jackson, 559 S.W.2d 391, 395 (Tex.App.-Houston [14th Dist.] 1977, writ ref'd n.r.e.) ; Middleton v. Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex. App.-Houston [14th Dist.] 1985), writ ref'd n.r.e., 699 S.W.2d 199 (Tex. 1985) (per curiam).
In their final point of error, the Lance parties challenge the trial court's award of attorneys' fees, generally, as legally and factually insufficient. The Lance parties then state the guiding caselaw pertaining to an award of attorney fees under the Declaratory Judgments Act and the requirement that the Robinson parties prove the requested fees are reasonable and just. The Lance parties also outline the general caselaw for determination of the legal sufficiency and factual sufficiency of evidence to support a trial court's judgment.
In the argument following the statement of the point of error, the Lance parties' do not specifically challenge any of the findings of fact or conclusions of law; rather, the argument presents a global challenge to the trial court's award of attorney fees, generally, as lacking supporting evidence.
To begin, the Lance parties do not challenge the conclusions of law as erroneous as a matter of law, but without specification, attack the sufficiency of the evidence to support the trial court's attorney-fee award. This argument is not sufficient to challenge the trial court's conclusions of law on appeal because this court may only review a trial court's conclusions of law when "attacked as erroneous as a matter of law, but not when attacked on grounds of sufficiency of the evidence to support them...." Whitehead, 854 S.W.2d at 178 ; Kinabrew, 589 S.W.2d at 146 ; see also *630 Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). Because they are not sufficiently challenged on appeal, the trial court's conclusions of law are binding on this court. See Whitehead, 854 S.W.2d at 178 ; Kinabrew, 589 S.W.2d at 146.
In the second and third conclusions of law, the trial court concluded, Plaintiffs are entitled to recover attorney fees in the amount of $90,000 contingent upon success on appeal, and BMA is entitled to recover $31,025.00 contingent upon success on appeal. The trial court concluded these amounts "are equitable and just." Because these conclusions of law are binding upon this court, and a trial court's conclusions of law are drawn from the facts as it finds them, even if the Lance parties present a sufficient challenge to the findings of fact, these conclusions of law are still binding and must stand. See Whitehead, 854 S.W.2d at 178 ; Kinabrew, 589 S.W.2d at 146.
With regard to the sufficiency challenge to the trial court's findings of fact, although the Lance parties did not identify a specific finding of fact, this court may liberally construe the general argument presented to be a challenge to findings of fact 1 and 2, as these are the only findings which pertain to attorney fees incurred. Finding of fact 1 states, "the amount of segregated, reasonable and necessary attorney's fees attributable to and incurred by plaintiffs in prosecuting their severed claims against the defendants ... is $90,000.00", and finding of fact 2 states the same attributable to and incurred by BMA as $31,025.00. The Lance parties contend only that the trial court's award is not reasonable because the Robinson parties did not separate the fees. This court will examine the factual sufficiency of this challenge, even though bound by the conclusions of law because Conclusions of Law 2 and 3 conclude the fees are "equitable and just", yet the construed argument appears to pertain only to sufficiency with regard to the issue whether the awarded fees are "reasonable."
The Declaratory Judgments Act provides that in any proceeding under the Act "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM.CODE § 37.009 ; Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998). Because the Declaratory Judgments Act provides that the court "may" award attorney fees, the statute thus affords the trial court a measure of discretion in deciding whether to award attorney fees or not. Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997) ; Barshop v. Medina County Underground Water Conservation Dist., 925 S.W.2d 618, 637-38 (Tex. 1996) ; Texas Educ. Agency v. Leeper, 893 S.W.2d 432, 444-46 (Tex. 1994). The Declaratory Judgments Act entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law. Bocquet, 972 S.W.2d at 20. It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence. e.g., Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex. 1997) ; Beaumont Bank v. Buller, 806 S.W.2d 223, 226 (Tex. 1991).
Therefore, it would be an abuse of discretion for a trial court to award fees without factually sufficient evidence. Following this standard of review and direction from the Act, in reviewing an attorney fee award under the Act, the court of appeals must determine whether the trial court abused its discretion by awarding fees when there was insufficient *631 evidence that the fees were reasonable and necessary, or whether the award was inequitable or unjust. Bocquet, 972 S.W.2d at 20. Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees. Id. This multi-faceted review involving both evidentiary and discretionary matters is required by the language of the Act. Id.
When an appellant contends that there is no evidence to support an adverse finding on which her opponent had the burden of proof, the appellate court will consider only the evidence and inferences which tend to support the contested issue and disregard all evidence and inferences to the contrary. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) ; Beard v. Beard, 49 S.W.3d 40, 54-56 (Tex.App.-Waco 2001, pet. denied). The appellate court will sustain such a point if: (a) there is a complete absence of evidence of a vital fact; (b) we are barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. Id. "More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " Id. (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) ).
In the present case, the record indicates the trial court's attorney fee award was reasonable, and there was some evidence to support it. The record reveals more than a scintilla of evidence that the Robinson parties and BMA did separate the attorney fees incurred in litigating the preliminary injunction and summary judgment from the remaining causes of action. The Robinson parties' lead counsel, Stephan B. Rogers, testified to the attorney fees they incurred. Mr. Rogers testified that 85% of the itemized work related to the issues resolved in the summary judgment order in the segregated cause. The trial court's award is less than the amount testified. BMA's lead counsel, Ed Hecker, testified the BMA's claims include only the declaratory relief and the CPRC Chapter 12 claims. Mr. Hecker testified he redacted from the submitted invoices all attorney fees BMA incurred that pertained to the CPRC Chapter 12 claims.
Although this court must disregard all evidence to the contrary of the challenged findings of fact, the record contains no controverting evidence with regard to the issue of separation of fees incurred. The Lance parties' attorney, Cynthia Cox Payne testified with regard to the reasonability of the hourly rate and the total amount of attorney fees invoiced; however, she did not address the issue whether the attorney fees invoiced were unreasonable because they included work from the severed cause. Therefore, the record contains sufficient evidence to support the trial court's findings of fact 1 and 2.
For these reasons, the Lance parties' challenge to the legal and factual sufficiency of the evidence to support the trial court's award of attorney fees is overruled.
CONCLUSION
The trial court's Amended Order on Plaintiffs' Motion for Partial Summary Judgment and Amended Award of Attorney's Fees and Final Judgment are affirmed.

It is common thought, but is disputed in this litigation, that with regard to lakefront property on Medina Lake, Elevation 1084 is the dividing line between privately-owned property and property owned by Bexar-Medina-Atascosa Water Improvement District No. 1 ("BMA"). That is, BMA owns all land between Elevation 1084 and the lakefront; however, the landowners have an easement to use and improve the land below Elevation 1084 corresponding to their respective lakefront property, at their own risk based upon fluctuating water levels. The issue whether the BMA owns all land below Elevation 1084 is a matter in dispute in this litigation, but is not determined by the trial court's declaratory judgment in this action. The trial court's failure to decide this legal issue has no bearing on the matters litigated, decided, and appealed.

The trial court crossed out, and thus, did not award items (3) and (10) in the proposed order.

As presented, this argument pertains to a procedural defect. While the Lance parties do not specifically challenge the trial court's declaratory relief granted, this argument will be liberally construed to be a non-evidentiary broad challenge to the trial court's declarations award.

As presented, this argument pertains to a procedural defect on the issue whether the Robinson parties presented a correct cause of action to obtain the relief requested. While the Lance parties do not specifically challenge the trial court's declaratory relief granted, this argument will be liberally construed to be a non-evidentiary broad challenge to the trial court's declarations award.

While the Lance parties do not specifically challenge the trial court's declaratory relief granted, it appears this appellate issue would affect declarations 4, 6, 7, and 11 in the trial court's Amended Order on Plaintiffs' Motion for Partial Summary Judgment. Thus, this argument will be liberally construed to be a non-evidentiary broad challenge to declarations 4, 6, 7, and 11.

While the Lance parties do not specifically challenge the trial court's declaratory relief granted, it appears this appellate issue would affect declarations 4, 6, 7, and 11 in the trial court's Amended Order on Plaintiffs' Motion for Partial Summary Judgment, as those are the declarations that pertain to any easement derived from the Spettle Deed. Thus, this argument will be liberally construed to be a non-evidentiary broad challenge to declarations 4, 6, 7, and 11.

The Lance parties did attach an affidavit from land surveyor Mark Grogan to their supplemental motion for rehearing on the trial court's order granting partial summary judgment in favor of the Robinson parties. This affidavit is not part of the summary judgment record, as it was attached to a motion for rehearing, which was denied. In any event, the affidavit states only, in a conclusory fashion, "the plaintiff's chain of title goes back to the Spettle Partition deed, not the Spettle Deed." The affidavit provides no basis for this conclusion, nor does this conclusion necessarily controvert the testimony of Mr. Sinclair.

None of the "reasons" presented under this heading specifically challenge any of the trial court's declaratory relief granted. However, it appears the appellate issues presented would affect declarations 4, 6, 7, and 11 in the trial court's Amended Order on Plaintiffs' Motion for Partial Summary Judgment, as those are the declarations that pertain to any easement derived from the Spettle Deed. Thus, this argument will be liberally construed to be a non-evidentiary broad challenge to declarations 4, 6, 7, and 11.